IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| **THE CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY,**<br><br>*Plaintiff,*<br><br>**v.**<br><br>**THE WAREHOUSE ATHENS LLC, REESE ALEXANDER,**<br><br>*Defendants.* | **CIVIL ACTION NO. 3:25-cv-00028-TES** |

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This is a declaratory-judgment action brought pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201. [Doc. 1, ¶ 9]. Through the legal standards that guide summary judgment, The Cincinnati Specialty Underwriters Insurance Company ("CSU") seeks a ruling that it doesn't have a duty to defend or indemnify its insured, The Warehouse Athens LLC ("Warehouse"), in an underlying lawsuit that Reese Alexander ("Alexander") filed against Warehouse in the State Court of Athens-Clarke County.[1] [*Id.* at ¶¶ 1, 33, 43]; [Doc. 15-1, p. 5].

[1] "[A]n insurer's duty to defend is broader than its duty to indemnify." *Shafe v. Am States Ins. Co.*, 653 S.E.2d 870, 873 (Ga. Ct. App. 2007). Since, for the reasons explained below, CSU has no duty to defend Warehouse in the underlying lawsuit, CSU necessarily owes no duty to indemnify Warehouse for any judgment entered against it in that suit.

## BACKGROUND

In that suit, Alexander seeks to recover damages from Warehouse under a host of negligence-based theories for the personal injuries he received from the alleged assault and battery by Warehouse's employees. [Doc. 15-2, ¶¶ 14–15]; [Doc. 15-4, pp. 4–10]; [Doc. 16-2, ¶ 14]. Alexander sued Warehouse based on the allegation that its employees caused a "permanent impairment and disability to his . . . hand." [Doc. 15-4, ¶ 40]. CSU is providing a defense to Warehouse in the underlying lawsuit pursuant to a reservation of rights.[2] [Doc. 15-2, ¶ 16].

### 1. <u>The Policy and Its "Assault Or Battery" Exclusion</u>

CSU issued a commercial insurance policy to Warehouse for the period of March 1, 2021, to March 1, 2022. [*Id.* at ¶ 1]. Under the policy, CSU agreed to "pay those sums the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies" and "to defend the insured against any 'suit' seeking those damages." [*Id.* at ¶ 2]; [Doc. 15-3, p. 19]. The policy defines the term "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death

[2] Local Rule 56 clearly mandates that a party responding to a motion for summary judgment must respond to "each of the movant's numbered material facts." LR 56, MDGa. Although Alexander filed his own statement of material facts, he did not respond to CSU's statement of material facts when submitting his response to CSU's motion for summary judgment. [Doc. 16-2]. Failure to comply with Local Rule 56 means that "[a]ll material facts contained in the movant's statement which are not specifically controverted by specific citation to particular parts of . . . the record shall be deemed to have been admitted, unless otherwise inappropriate." *Id.* Since Alexander failed to respond to CSU's statement of material facts, the Court deems him to have admitted the material facts asserted by CSU. *See Hall-Gordon v. Bibb Cnty. Sch. Dist.*, No. 5:21-cv-00143-TES, 2022 WL 3704917, at *1 (M.D. Ga. Aug. 27, 2022); *aff'd Gordon v. Bibb Cnty. Sch. Dist.*, No. 22-13286, 2023 WL 8253881, at *1–2 (11th Cir. Nov. 29, 2023); *see also Mathews v. Walmart, Inc.*, No. 5:22-cv-00397-TES, 2024 WL 3905815, at *2 (M.D. Ga. Aug. 22, 2024).

resulting from any of these at any time," and it defines the term "suit" as "a civil proceeding in which damages because of 'bodily injury' . . . to which this insurance applies are alleged." [Doc. 15-2, ¶ 3]; [Doc. 15-3, pp. 31, 34]. The policy requires that the "bodily injury" occur during the policy period and be caused by an "occurrence"—"an accident, including continuous or repeated exposure to substantially the same general harmful conditions." [Doc. 15-2, ¶ 4]; [Doc. 15-3, pp. 19, 33].

However, coverage is subject to certain exclusions. Relevant to Alexander's claims in the underlying lawsuit, the policy includes an endorsement, entitled **EXCLUSION - ASSAULT OR BATTERY**. [Doc. 15-2, ¶ 5]; [Doc. 15-3, p. 47]. This exclusion specifically excludes coverage under the policy for damages arising out of assault or battery. [Doc. 15-2, ¶ 5]. The endorsement states, in pertinent part:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**
**EXCLUSION – ASSAULT OR BATTERY**

* * *

**Assault Or Battery**

This insurance does not apply to "bodily injury" . . . arising out of:

**1.** An actual or threatened assault or battery whether caused by or at the instigation or direction of any insured, their employees, patrons or any other person;

**2.** The failure of any insured or anyone else for whom any insured is legally responsible to prevent or suppress assault or battery; or

**3.** The failure to provide an environment safe from assault or battery, including but not limited to the failure to provide adequate security, or failure to warn of the dangers of the environment that could contribute to assault or battery; or

**4.** The failure to render or secure medical treatment or care necessitated by any assault or battery; or

**5.** The negligent investigation or reporting or failure to report an assault or battery to proper authorities; or

**6.** The negligent:
**a.** Employment;
**b.** Supervision;
**c.** Training;
**d.** Retention;
of a person for whom any insured is or ever was legally responsible and whose conduct would been excluded by the **Assault Or Battery** exclusion above.

[*Id.* at ¶¶ 5–6]; [Doc. 15-3, p. 47]; [Doc. 16-2, ¶ 11].

**2. <u>Alexander's Claims Against Warehouse</u>**

In the underlying lawsuit, Alexander alleges he attended a concert on Warehouse's premises as an invitee on March 27, 2021, "in a reasonable and regular," non-disruptive and non-disorderly manner. [Doc. 15-2, ¶ 8]; [Doc. 15-4, ¶¶ 8–11]; [Doc. 16-2, ¶ 2]. While at the concert, four members of Warehouse's security staff "suddenly and without warning" approached Alexander, grabbed him, and forcefully ejected him from the venue. [Doc. 15-2, ¶ 9]; [Doc. 15-4, ¶ 12]. He alleges that he "submitted to the security staff immediately and did not resist their attempt to escort him out of the venue." [Doc. 15-2, ¶ 10]; [Doc. 15-4, ¶ 13]; [Doc. 16-2, ¶ 4]. Despite this, Alexander claims that Warehouse's security staff "continued to use intense force and even placed [him] in a 'choke hold [*sic*]'" before "forcefully [throwing him] out the door and into the street." [Doc. 15-2, ¶¶ 10–11]; [Doc. 15-4, ¶¶ 14–15]. Alexander says he "landed on his hands and face" and sustained visible injuries to his hand and pinky finger, prompting a security guard to call paramedics for on-site treatment. [Doc. 15-2, ¶ 11]; [Doc. 15-4,

¶¶ 16–17], [Doc. 15-5, Alexander Depo., p. 8:17–19].[3] Once treated, Warehouse permitted Alexander to go back in and watch the concert. [Doc. 15-4, ¶ 18].

During his deposition in the underlying lawsuit, Alexander testified that he sustained physical injuries as the result of a Warehouse employee approaching him from behind and putting him "in a chokehold" or "headlock" during which time his "arms [were] pinned." [Doc. 15-2, ¶ 12]; [Doc. 15-5, Alexander Depo., pp. 7:19–21; 13:23–25; 16:14–18]. He also testified that he sustained physical injuries as the result of a Warehouse employee forcefully throwing him "from the building to the street" where he "landed face first," sustaining a cut to his neck and injury to his finger. [Doc. 15-2, ¶ 13]; [Doc. 15-5, Alexander Depo., pp. 8:2–8; 17:20—18:3; 19:8—20:1; 20:10–15].

## LEGAL STANDARD

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). When deciding a Rule 56-based motion, courts should view the evidence and draw any inferences in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v.*

[3] The Court's page citations to Alexander's deposition excerpts correspond to the blue CM/ECF header rather than to the actual page numbers pulled from his full deposition.

*Catrett*, 477 U.S. 317, 323–24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

## APPLICABLE LAW

Since construing insurance policies is a question of law for courts to decide, coverage disputes are well-suited for summary-judgment motions. *Nationwide Mut. Fire Ins. Co. v. Somers*, 591 S.E.2d 430, 433 (Ga. Ct. App. 2003). Easily enough, the parties agree that Georgia law on construction and interpretation of contracts governs the outcome of this diversity-based declaratory-judgment action. *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 135 F.3d 750, 752 (11th Cir. 1998); *AEGIS Elec. & Gas Int'l Servs. Ltd. v. ECI Mgmt. LLC*, 967 F.3d 1216, 1223 (11th Cir. 2020); [Doc. 15-1, p. 6]; [Doc. 16-1, p. 6]; [Doc. 21-1, p. 8]. Under Georgia law, when interpreting an insurance policy, the "cardinal rule" is "to determine and carry out the intent of the parties." *Nat'l Cas. Co. v. Ga. Sch. Bds. Ass'n-Risk Mgmt. Fund*, 818 S.E.2d 250, 253 (Ga. 2018). The policy is to be read "as a layman would" and "not as it might be analyzed by an insurance expert or an attorney." *State Farm Mut. Auto. Ins. Co. v. Staton*, 685 S.E.2d 263, 265 (Ga. 2009).

If a policy's language is unambiguous, the contract's plain terms must be enforced. *See id.* at 266. If, though, the policy is found to be ambiguous, then its provisions are "construed liberally against the insurer and most favorably for the insured." *Id.* at 265. Georgia courts find an insurance contract ambiguous "only if its

terms are subject to more than one reasonable interpretation." *Id.* Courts may not "strain the construction of the policy so as to discover an ambiguity." *Id.* at 265–66. "In other words, the rule of liberal construction of an insurance policy cannot be used to create an ambiguity where none, in fact, exists." *Id.* at 266. If "the language fixing the extent of liability of an insurer is unambiguous and but one reasonable construction is possible, [courts] must expound the contract as made." *Id.*

When it comes to an insurer's duty to defend, that "is determined by 'comparing the allegations of the [underlying] complaint with the provisions of the policy.'" *Cont'l Cas. Co. v. Winder Lab'ys, LLC*, 73 F.4th 934, 941 (11th Cir. 2023) (quoting *Pilz v. Monticello Ins. Co.*, 599 S.E.2d 220, 221 (Ga. Ct. App. 2004)). Under Georgia law, when an insurance policy uses the broad term "suit," the insurer has a duty "to defend the entire suit if any of the individual claims could be covered under the [p]olicy." *Id.* at 941–42 (quoting *S. Tr. Ins. Co. v. Mountain Express Oil Co.*, 828 S.E.2d 455, 458 (Ga. Ct. App. 2019)); *see also City of Atlanta v. St. Paul Fire & Marine Ins. Co.*, 498 S.E.2d 782, 784 (Ga. Ct. App. 1998) ("If the facts as alleged in the complaint *even arguably* bring the occurrence within the policy's coverage, the insurer has a duty to defend the action.") (emphasis added). If, however, the complaint from the underlying lawsuit "does not assert any claims upon which there would be insurance coverage, the insurer is justified in refusing to defend" the lawsuit against its insured. *Winder Lab'ys, LLC*, 73 F.4th at 942 (quoting *St. Paul Fire*, 498 S.E.2d at 784).

## DISCUSSION

In this case, CSU takes the position that the policy's "Assault Or Battery" exclusion precludes coverage for the claims and allegations asserted by Alexander against Warehouse in the underlying lawsuit. [Doc. 15-1, p. 7]. In response to CSU's position, Alexander contends that because "the words 'assault' and 'battery' are not defined" within the policy, a "conflict" exists between three possible definitions of those two terms that require any ambiguity to be construed against CSU as the drafter of the policy. *Staton*, 685 S.E.2d at 265; [Doc. 16-1, pp. 9–10]; [Doc. 16-2, ¶ 12]. Following a similar path, Warehouse argues that the "singular question to be resolved" is whether "the language in the bodily injury exclusion in the policy is plain, clear[,] and unambiguous[.]" [Doc. 21-1, p. 1].

With respect to how Alexander's allegations from the underlying complaint must be viewed on the duty-to-defend inquiry, *Pilz*, 599 S.E.2d at 221, CSU points out that Alexander alleged he was "suddenly and without warning" "grabbed . . . forcefully" by members of Warehouse's security staff; that they "continued to use intense force" and placed him in a "choke hold [*sic*]"; that they "threw [him] out of the door and into the street" causing him to land on his hands and face; and that he sustained physical injuries as the result of these actions. [Doc. 15-1, p. 9]; [Doc. 15-4, ¶¶ 12, 14–16]. Those allegations unquestionably depict an assault or battery even though Alexander didn't specifically sue for those intentional torts. [Doc. 15-1, pp. 9–10].

To begin, since "[t]he terms 'assault' and 'battery' are not specifically defined" under the policy, CSU argues that the Court must apply their "legal and ordinary meaning." [Doc. 15-1, p. 8]. It's right. "When Georgia courts construe words that are left undefined in an insurance policy, they often turn to dictionaries 'because they supply the plain, ordinary, and popular sense unless the words are terms of art.'" *Lyons v. Allstate Ins. Co.*, 996 F. Supp. 2d 1316, 1319 (N.D. Ga. 2014) (quoting *W. Pac. Mut. Ins. Co. v. Davies,* 601 S.E.2d 363, 367 (Ga. Ct. App. 2004)); *see also* O.C.G.A. § 13-2-2(2) ("Words generally bear their usual and common signification; but technical words, words of art, or words used in a particular trade or business will be construed, generally, to be used in reference to this peculiar meaning."). Although Alexander argues that the words "assault" and "battery" are "terms of art," "[t]he fact remains that his allegations in the [u]nderlying [l]awsuit unambiguously describe and constitute an assault or battery—whether that be under [their] common dictionary definition[s], under tort law, or under criminal law." [Doc. 16-1, p. 7]; [Doc. 17, p. 6]; *see also* [Doc. 21-1, p. 15].

Turning to good ole Merriam-Webster, CSU says "assault" is defined as "'a violent or physical attack' or, in the legal sense, 'a threat or attempt to inflict offensive physical contact or bodily harm on a person . . . that puts the person in immediate danger of or in apprehension of such harm or contact.'"[4] [Doc. 15-1, p. 8]. Battery,

---

[4] Assault, MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/assault (last visited Aug. 4, 2026).

according to the same dictionary, is, in the legal sense, "an offensive touching or use of force on a person without the person's consent."[5] *See* [*id.*]. Then, in the civil context for intentional torts, Georgia courts have explained, "[a]ny act of physical violence (and the law will not draw a line between different degrees of violence), inflicted on the person of another, which is not necessary, is not privileged, and which constitutes a harmful or offensive contact, *constitutes an assault and battery*." *Brown v. Super Discount Markets, Inc.*, 477 S.E.2d 839, 841 (Ga. Ct. App. 1996) (emphasis added); *see also* O.C.G.A. § 51-1-13 ("A physical injury done to another shall give a right of action to the injured party, *whatever may be the intention* of the person causing the injury, unless he is justified under some rule of law.") (emphasis added).[6] Lastly, under Title 16 of the Georgia Code, "[a] person commits the offense of simple assault" when he either "[a]ttempts to commit a violent injury to the person of another [or] [c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury." O.C.G.A. § 16-5-20(a).

---

[5] Battery, MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/battery (last visited Aug. 4, 2026).

[6] In his brief, Alexander boldly states that "in the civil context, neither assault nor battery has an intent element . . . ." [Doc. 16-1, p. 8]. If that is true, then assault and battery are just other forms of negligence. When making such a head-scratching argument, one would think that the maker would provide the Court with a string of recent and relevant cases to support his novel proposition that, to date, all legal scholars have missed. Alexander offered none. Nor did he offer any argument why the Court shouldn't apply recent cases saying the exact opposite. *See, e.g., Soundara v. AMB Sports & Ent.*, 899 S.E.2d 428, 434 (Ga. Ct. App. 2024) ("It is well settled that assault and battery are intentional torts."); *Russell v. Flixbus, Inc.*, No. 1:23-CV-796-MHC, 2024 WL 4522819, at *5 (N.D. Ga. June 11, 2024) (quoting *Soundara*, 899 S.E.2d at 434). Even when the Court views Alexander's argument through its most gracious and forgiving lens, the Court struggles to find the good-baith basis for such an untenable position. It defies both logic and common sense to think that one can unintentionally assault or batter another.

As CSU points out, Alexander makes no effort to explain how his allegations from the underlying complaint would not constitute assault or battery regardless of the "definitional source . . . relied upon." [Doc. 17, p. 6]. CSU further notes that Alexander "does not contest that he sustained 'violent injuries' and does not assert that the acts of him being forcefully grabbed, placed into a chokehold, and thrown into a street were somehow unintentional." [Doc. 17, p. 6]; *see also* [Doc. 16-2, ¶ 5]. Contrary to Alexander's contentions, there's no question of fact "as to whether the actions causing [his] injuries were merely negligent or an assault and/or battery." [Doc. 17, p. 6 (quoting [Doc. 16-1, p. 2])]. Even if there was some question of fact on whether Warehouse, via its security staff, committed acts of negligence versus intentional torts, the "Assault Or Battery" exclusion "encompasses the underlying claims because Georgia law construes 'arising out of' assault or battery language broadly to encompass negligence actions." *Nautilus Ins. Co. v. EJIII Dev. Co.*, No. 1:17-CV-2048-TCB, 2018 WL 3524639, at *3 (N.D. Ga. July 19, 2018). "Georgia courts interpret 'arising out of' a circumstance in this context to mean that, without that circumstance, the claim could not exist." *Id.* (quoting *USMoney Source, Inc. v. Am. Int'l Specialty Lines Ins. Co.*, 288 F. App'x 558, 560 (11th Cir. 2008)). "Stated differently, 'a claim does not "arise out of" a circumstance if, independent of that circumstance, the claim could still exist." *USMoney Source, Inc.*, 288 F. App'x at 560.

Here, the underlying claims unquestionably *arise* from what Merriam-Webster,

tort law, and criminal law all unequivocally describe as "assault" or "battery." *See Nautilus Ins. Co.*, 2018 WL 3524639, at *3. Without the alleged actions of the security staff, Alexander wouldn't have a claim against Warehouse.

Thus, the Court easily finds that the "Assault Or Battery" exclusion applies to the entirety of the claims lodged by Alexander against Warehouse in the underlying lawsuit despite his artful attempt to plead the underlying complaint outside the exclusion's reach. *See Gen. Star Indem. Co. v. Parkway Prime, LLC*, No. 1:22-CV-4662-MHC, 2023 WL 11959384, at *3 (N.D. Ga. Aug. 28, 2023) (holding, when "various premises-liability claims against [an insured] . . . arise out of [the insured's] 'act[s]' . . . that 'resulted in an assault or battery,' [an insurer] has no duty to defend . . . ."); *see* [Doc. 16-2, ¶¶ 13–15]. Since Alexander's underlying complaint does not "*even arguably* bring the occurrence within the policy's coverage," CSU has no duty to defend Warehouse in the underlying lawsuit. *St. Paul Fire*, 498 S.E.2d at 784; *see also Penn-Am. Ins. Co. v. Disabled Am. Veterans, Inc.*, 490 S.E.2d 374, 376 (Ga. 1997).

Looking at the policy issued to Warehouse by CSU, the "Assault Or Battery" exclusion "clearly [excludes coverage for Alexander's claims], which would not have arisen but for the alleged assault and battery committed against [him] on [Warehouse's] premises." *First Specialty Ins. Corp. v. Flowers*, 644 S.E.2d 453, 455–56 (Ga. Ct. App. 2007); *Pilz*, 599 S.E.2d at 222–23. The exclusion states in black and white that CSU's insurance "does not apply to 'bodily injury' . . . arising out of . . . [a]n actual or threatened assault

or battery whether caused by or at the instigation or direction of any insured, their employees, patrons[,] or any other person." [Doc. 15-2, ¶¶ 5–6]; [Doc. 15-3, p. 47]; [Doc. 16-2, ¶ 11]. Such phrasing has already been blessed by the Georgia Court of Appeals. "Inclusion of [the word] "whether" is significant and makes clear that the exclusion is intended to apply to *all instances of assault [or] battery* occurring on the [insured's] premises." *Flowers*, 644 S.E.2d at 456 (reversing denial of summary judgment to insurance company).

## CONCLUSION

For the reasons discussed more fully above, the Court **GRANTS** CSU's motion for summary judgment. [Doc. 15]. Accordingly, the Court **DECLARES** that CSU has no duty to defend Warehouse in the underlying lawsuit or indemnify it for any claim or judgment arising therefrom. *See* n.1, *supra*. The Court **DIRECTS** the Clerk of Court to **ENTER** judgment accordingly and **CLOSE** this case.

**SO ORDERED**, this 5th day of August, 2026.

*S/ Tilman E. Self, III*
**TILMAN E. SELF, III**
**UNITED STATES DISTRICT JUDGE**